1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     David Eiseman (Bar No. 114758)
2      davideiseman@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California  94111-4788
   Telephone:    (415) 875-6600
4  Facsimile:    (415) 875-6700

5  Attorney for Defendant Barnes & Noble, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TECHNOLOGY PROPERTIES LIMITED LLC, et al.,<br><br>    Plaintiffs,<br><br>    vs.<br><br>BARNES & NOBLE, INC.,<br><br>    Defendant. | CASE NO. 12-cv-03863-VC<br><br>DEFENDANT BARNES & NOBLE, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>Date: March 17, 2015<br>Time: 10:00 am<br>Place: Courtroom 5 – 4th Floor<br>Judge: Hon. Paul S. Grewal |

# NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on March 17, 2015, at 10:00 am, or as soon thereafter as counsel may be heard before the Honorable Paul S. Grewal in Courtroom 5 of the above-entitled Court, located at 280 South 1st Street, 4th Floor, San Jose, CA 95113, Defendant Barnes & Noble, Inc. ("Barnes & Noble") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings with respect to Plaintiffs' third cause of action.[1] This motion is made on the following ground: Plaintiffs' third cause of action is barred by the *Kessler* doctrine because the ITC found that Barnes & Noble did not infringe U.S. Patent No. 5,809,336, and Plaintiffs chose not to appeal this decision to the Federal Circuit.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the pleadings and papers on file in this action or deemed to be on file at the time this Motion is heard, other such evidence and argument as may be presented in connection with the hearing of this Motion, and all matters of which this Court may take judicial notice.

DATED: February 4, 2015    QUINN EMANUEL URQUHART & SULLIVAN, LLP


By */s/ David Eiseman*
David Eiseman
Attorney for Defendant Barnes & Noble, Inc.

---

[1] This Court's Standing Order indicates that it will not hear oral argument on dispositive motions without affirmative written consents. Standing Order for Civil Practice In Cases Assigned for All Purposes to Magistrate Judge Paul S. Grewal at 1. Nonetheless, in light of Judge Chhabria's order referring this case to this Court for all pretrial purposes (Dkt. 41), Barnes & Noble is filing its motion before this Court for its report and recommendation.

-1-    Case No. 12-cv-03863-VC
BARNES & NOBLE'S MOTION FOR JUDGMENT ON THE PLEADINGS

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................................ 1

STATEMENT OF ISSUE TO BE DECIDED ................................................................................ 2

STATEMENT OF FACTS ............................................................................................................... 2

    A.    TPL's Complaint in this Court ............................................................................. 2

    B.    TPL's Complaint in the ITC .................................................................................. 2

    C.    The ITC Decision .................................................................................................. 3

ARGUMENT ................................................................................................................................... 4

I.    LEGAL STANDARD ........................................................................................................ 4

II.    THE *KESSLER* DOCTRINE BARS TPL FROM RE-LITIGATING WHETHER BARNES & NOBLE'S NOOK PRODUCTS INFRINGE THE '336 PATENT ................... 4

    A.    The *Kessler* Doctrine Prevents Plaintiffs from Relitigating a Finding of Non-Infringement ............................................................................................... 4

    B.    The *Kessler* Doctrine Bars TPL's Claims in Light of the ITC's Finding of Non-Infringement .............................................................................................. 6

    C.    TPL Cannot Evade the Binding Effect of an ITC Finding of Non-Infringement by Choosing Not to Appeal ............................................................. 8

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ackermann v. United States*,
    340 U.S. 193 (1950) ..........................................................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................................4

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
    80 F.3d 1553 (Fed. Cir. 1996) ........................................................................................7, 8

*Brain Life, LLC v. Elekta Inc.*,
    746 F.3d 1045 (Fed. Cir. 2014) ........................................................................1, 5, 6, 8, 10

*Dworkin v. Hustler Magazine Inc.*,
    867 F.2d 1188 (9th Cir. 1989) ...........................................................................................4

*EFCO Corp. v. U.W. Marx, Inc.*,
    124 F.3d 394 (2d Cir. 1997) ..............................................................................................9

*Federated Dep't Stores, Inc. v. Moitie*,
    452 U.S. 394 (1981) ..........................................................................................................9

*Function Media, L.L.C. v. Kappos*,
    508 F. App'x 953, 956 (Fed. Cir. 2013) ............................................................................9

*Harris v. County of Orange*,
    682 F.3d 1126 (9th Cir. 2012) ...........................................................................................4

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
    189 F.3d 971 (9th Cir. 1999) .............................................................................................4

*Kessler v. Eldred*,
    206 U.S. 285 (1907) ................................................................................................. passim

*Lyon v. Chase Bank USA, NA*,
    656 F.3d 877 (9th Cir. 2011) .............................................................................................4

*MGA, Inc. v. General Motors Corp.*,
    827 F.2d 729 (Fed. Cir. 1987) ...........................................................................................6

*McLellan v. Perry*,
    No. 3:12-CV-00391-MMD, 2014 WL 1309291 (D. Nev. Mar. 27, 2014) .......................9

*Powertech Tech. Inc. v. Tessera, Inc.*,
    660 F.3d 1301 (Fed. Cir. 2011) ......................................................................................7, 8

*SpeedTrack, Inc. v. Office Depot, Inc.*,
    No. C 07-3602 PJH, 2014 WL 1813292 (N.D. Cal. May 6, 2014) .....................5, 6, 8, 10

*Texas Instruments v. Cypress Semiconductor Corp.*,
    90 F.3d 1558 (Fed. Cir. 1996) ..................................................................................7, 8

*Twelve John Does v. Dist. of Columbia*,
    841 F.2d 1133 (D.C. Cir. 1988) ......................................................................................9

**Miscellaneous**

Federal Rule of Civil Procedure 12(c) ...................................................................................4, 11

Federal Rule of Civil Procedure 12(b) ........................................................................................4

1    Defendant Barnes & Noble, Inc. ("Barnes & Noble") respectfully brings this motion for
2    judgment on the pleadings to dismiss the third cause of action – regarding U.S. Patent No.
3    5,809,336 ("the '336 Patent") – of Plaintiffs Technology Properties Limited, Phoenix Digital
4    Solutions, and Patriot Scientific Corporation ("TPL" or "Plaintiffs").

**PRELIMINARY STATEMENT**

When it initiated this suit, TPL also initiated an ITC investigation on the basis of alleged infringement of the '336 Patent and sought an exclusion order barring importation of the Barnes & Noble NOOK products that TPL accuses of infringing the '336 Patent in this suit. The parties jointly requested, and the Court granted, a stay pending the outcome of the ITC investigation. Now, TPL's infringement claim regarding the '336 Patent should be dismissed because the ITC has ruled that Barnes & Noble's NOOK products do not infringe the '336 Patent, and that finding is binding on this Court under the doctrine of *Kessler v. Eldred*, 206 U.S. 285 (1907).

The *Kessler* doctrine instructs that a finding of non-infringement precludes relitigation even where that finding would not be the basis for res judicata or collateral estoppel. In a case just decided last year, the Federal Circuit held that the *Kessler* doctrine is still binding precedent and still stands for the proposition that a patentee cannot bring a second suit after a finding of non-infringement. Specifically, the *Kessler* Doctrine "fills the gap" in preclusion doctrines and allows "an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result." *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1056 (Fed. Cir. 2014).

A straight-forward application of the *Kessler* doctrine establishes that TPL cannot relitigate the ITC's finding of non-infringement. TPL chose to bring a simultaneous action in the ITC. The ITC has jurisdiction to resolve the question of infringement. It conducted a thorough investigation after extensive briefing. The ALJ reached a carefully reasoned opinion finding non-infringement on multiple grounds. The full Commission affirmed the non-infringement determination. TPL could have, but chose not to, appeal that decision to the Federal Circuit. Thus, TPL had every opportunity to prove infringement in a competent tribunal and ultimately to the court that would hear an appeal in this case.

1    TPL should not get another chance simply because it would like to try again in another

2    forum.  The ITC proceeding is over and TPL lost.  Having elected not to appeal the ITC's

3    determination that Barnes & Noble's products do not infringe the '336 Patent, there is no basis in

4    law or policy for TPL to get another bite at the NOOK.

**STATEMENT OF ISSUE TO BE DECIDED**

Does the *Kessler* doctrine bar TPL's claims for infringement of the '336 Patent because the ITC has already found that Barnes & Noble's NOOK products do not infringe that patent, and TPL chose not to appeal that decision to the Federal Circuit?

**STATEMENT OF FACTS**

### A.    TPL's Complaint in this Court

On July 24, 2012, TPL brought suit against Barnes & Noble for alleged infringement of three patents.  *See* Compl. ¶¶ 19-33.  This motion concerns one of the three patents, U.S. Patent No. 5,809,336, entitled "High Performance Microprocessor Having Variable Speed Clock" ("the '336 Patent").  Specifically, TPL's Complaint alleges that Barnes & Noble's NOOK – an electronic reader (eReader) – infringes the '336 Patent because it has a "USB input/output interface for connecting the accused device to a peripheral device . . . having a clock independent of the CPU clock (*e.g.*, ring oscillator) connected to the central processing unit on the microprocessor of the NOOK . . . ."  *Id.* ¶ 30.

### B.    TPL's Complaint in the ITC

On the same day that it initiated this suit, TPL also initiated an ITC investigation against numerous companies on the basis of alleged infringement of the '336 Patent.[2]  The operative allegation of infringement at the ITC is exactly the same allegation set forth in TPL's Complaint in this Court, with TPL claiming that the NOOK is infringing because it has a "USB input/output interface for connecting the accused device to a peripheral device . . . having a clock independent

---

[2] *Certain Wireless Consumer Electronics and Components Thereof*, Inv. No. 337-TA-853.  This Court has granted a motion for transmission of the ITC record to the Court.  (Dkt. 36.)  The public version of the ITC opinion is available on the ITC's EDIS system (http://edis.usitc.gov).

of the CPU clock (*e.g.*, ring oscillator) connected to the central processing unit on the microprocessor of the NOOK." *Id.* ¶ 59. The parties jointly sought and the Court granted a stay of this case pending the outcome of the ITC investigation. (Dkt. 12.)

### C. The ITC Decision

Trial in the ITC investigation began on June 3, 2013, and concluded on June 11, 2013. On September 6, 2013, Administrative Law Judge E. James Gildea issued his final decision, which is termed the Initial Determination ("ID") in the Investigation, concluding that there has been no violation of Section 337 by any Respondent, including Barnes & Noble, for the reason that Respondents' products do not infringe any asserted claim of the '336 patent. *See* ID at iv. The ALJ conducted hearings that included expert testimony on the claims at issue, fact evidence from corporate witnesses regarding the products and chips at issue, and dozens of exhibits from both sides. *See, e.g.*, *id.* at 3, 25, 35-36, 118, Appendix B. After careful consideration of the private parties' and Commission Investigative Staff's post-hearing briefs, the ALJ issued an opinion more than 300 pages long, examining the claims at issue and concluding that there was no infringement. The ID reflects an exhaustive and thoughtful examination of the patent-in-suit, relevant technology, documentary evidence, and witness testimony presented during the evidentiary hearing.

The full Commission then granted review of the ID on November 25, 2013, and comprehensive briefing of the issues followed. In another carefully reasoned opinion of more than 70 pages, the Commission examined every aspect of the proceedings, including claim construction, factual and expert evidence, and the ALJ's ultimate conclusions. After review, the Commission affirmed the ALJ's determination, concluding that not a single one of the accused products infringes the '336 Patent. Commission Op. at 1.

TPL could have appealed to the Federal Circuit, but chose not to do so, thus rendering the ITC judgment final.

# ARGUMENT

## I. LEGAL STANDARD

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." *Lyon v. Chase Bank USA, NA*, 656 F.3d 877, 883 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). A motion under Rule 12(c) is "functionally identical" to a motion to dismiss under Rule 12(b). *Id.* (quoting *Dworkin*, 867 F.2d at 1192). Thus, for a Rule 12(c) motion, "[t]he Court inquires whether the complaint at issue contains 'sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face.'" *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "When considering a motion for judgment on the pleadings, this court may consider facts that are contained in materials of which the court may take judicial notice." *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (internal quotation marks omitted).

## II. THE *KESSLER* DOCTRINE BARS TPL FROM RE-LITIGATING WHETHER BARNES & NOBLE'S NOOK PRODUCTS INFRINGE THE '336 PATENT

Because TPL brought suit in the ITC, and the ITC held that Barnes & Noble's NOOK products do not infringe the '336 Patent, TPL cannot relitigate that holding now. This case falls squarely within the *Kessler* doctrine, which bars relitigation of failed patent claims even where the case does not fit precisely within the scope of res judicata or collateral estoppel.

### A. The *Kessler* Doctrine Prevents Plaintiffs from Relitigating a Finding of Non-Infringement

In *Kessler*, the owner of a patent related to electric lighters (Eldred) filed an infringement suit against a competing seller of lighters (Kessler). 206 U.S. at 287-88. Although Kessler prevailed, Eldred then brought an infringement suit against one of Kessler's customers, who sold the same lighters that were at issue in the first action. *Id.* Kessler intervened and also brought a separate suit to enjoin Eldred from asserting infringement claims against any of his customers for the use of the same lighter that had already been adjudged to be non-infringing. *Id.* The Supreme Court upheld the injunction, holding that the prior judgment, "whether it proceeds upon good

-4-

Case No. 12-cv-03863-VC
BARNES & NOBLE'S MOTION FOR JUDGMENT ON THE PLEADINGS

reasons or upon bad reasons, whether it was right or wrong, settled finally and everywhere, and so far as Eldred . . . was concerned, that Kessler had the right to manufacture, use and sell the electric cigar lighter before the court." *Id.* The Court explained that the judgment that Kessler had the right to sell his lighter came with "the corresponding duty of Eldred to recognize and yield to that right everywhere and always." *Id.* If Eldred were able to continue to file suits accusing products previously determined not to infringe, "the result will be practically to destroy Kessler's judgment right." *Id.* at 290. In short, by prevailing in the first suit, Kessler had immunized his lighter from any future infringement suits brought by Eldred.

The Federal Circuit just this year reaffirmed the validity of the *Kessler* doctrine. *See Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045 (Fed. Cir. 2014). In *Brain Life*, the Federal Circuit recognized that "[t]here exists a separate and distinct doctrine, known as the *Kessler* Doctrine, that precludes some claims that are not otherwise barred by claim or issue preclusion." *Id.* at 1055-56. "The *Kessler* Doctrine fills the gap between these preclusion doctrines, . . . allowing an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result." *Id.* at 1056. The principle underlying this conclusion is that "when an alleged infringer prevails in demonstrating noninfringement, the specific accused device(s) acquires the 'status' of a noninfringing device vis-à-vis the asserted patent claims" and "when the devices in the first and second suits are essentially the same, the new product(s) also acquires the status of a noninfringing device vis-à-vis the same accusing party or its privies." *Id.* at 1057 (internal quotation marks omitted). The court therefore held that "because Elekta's GammaPlan, GammaKnife, and SurgiPlan are essentially the same accused products" found non-infringing in a prior suit, "Brain Life's claims are barred under the *Kessler* Doctrine." *Id.* at 1058. Shortly after *Brain Life* was decided, this Court recognized that *Brain Life* had "demonstrat[ed] that *Kessler* is still in force, and . . . that it 'precludes some claims that are not otherwise barred by claim or issue preclusion.'" *SpeedTrack, Inc. v. Office Depot, Inc.*, No. C 07-3602 PJH, 2014 WL 1813292, at *9 (N.D. Cal. May 6, 2014) (quoting *Brain Life*, 746 F.3d at 1055-56). And this Court accordingly held an infringement suit barred under *Kessler*

where the same plaintiff had previously lost an infringement suit involving the same patent and essentially the same product. *Id.*

### B. The *Kessler* Doctrine Bars TPL's Claims in Light of the ITC's Finding of Non-Infringement

Here, as in *Kessler*, *Brain Life*, and *SpeedTrack*, there is a prior judgment of non-infringement for the same product and the same patent at issue in the prior litigation. In particular, the ITC has held that Barnes & Noble's NOOK products do not infringe the '336 Patent. That judgment is final because TPL elected not to appeal to the Federal Circuit.

The *Kessler* doctrine bars TPL from relitigating its claims against the NOOK devices in this Court. That the prior judgment came from the ITC, rather than a federal court, is of no moment. In *Kessler* itself, the Supreme Court recognized that the nature of the court did not matter: "If rights between litigants are once established by the final judgment of a *court of competent jurisdiction* those rights must be recognized in every way, and *wherever the judgment is entitled to respect*, by those who are bound by it." *Kessler*, 206 U.S. at 289 (emphases added). It is beyond dispute that the ITC – and the Federal Circuit – had jurisdiction over the matter at issue here, and that the ITC's judgment is entitled to respect. If TPL had any basis to disturb any aspect of the ITC's judgment, the proper course would have been to appeal. Having elected not to do so, TPL may not now press infringement claims against the NOOK that the ITC has finally resolved.

Indeed, the *Kessler* doctrine applies even where no Federal Circuit appeal is available and the question of infringement is resolved by a state court in interpreting a license agreement. In *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729 (Fed. Cir. 1987), the Federal Circuit held that the *Kessler* doctrine applies to state court judgments about the scope of license agreements that effectively resolve infringement questions, even though jurisdiction over infringement is exclusively federal. The court explained: "In this case, MGA selected its first defendant, first forum and first remedy. MGA had its day in court with a full trial on the merits of its case. . . . Nor was MGA left without recourse to seek correction of any perceived errors committed by the state court." *Id.* at 735. The same (and more) is true of the ITC judgment here: TPL chose to sue Barnes & Noble, chose the ITC forum, and chose not to appeal despite its potential for review of

the decision in the Federal Circuit. The *Kessler* doctrine is based *not* on the availability of res judicata, but on the policy behind preventing harassment and repeat litigation after a finding of non-infringement. And this policy applies equally to an ITC matter as it does to a state court matter. Indeed, the case for application of the *Kessler* doctrine is even stronger in the ITC context, given the expertise of the Commission, as opposed to a state court, which has no jurisdiction at all over patent claims and addressed the patent law issue only because it was a predicate to deciding the contract claim.

To be sure, the Federal Circuit has held that ITC decisions are not binding on district courts as a matter of res judicata or collateral estoppel. *See, e.g.*, *Texas Instruments v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996) ("The district court can attribute whatever persuasive value to the prior ITC decision that it considers justified.").[3] But none of those cases considered the *Kessler* doctrine at all. And for good reason: those cases did not involve a finding of non-infringement. *See, e.g.*, *id.* at 1562-63 (noting ITC finding of infringement); *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1563 (Fed. Cir. 1996) (considering ITC decision based on sanction for discovery violation).[4] Thus, in prior cases, the Federal Circuit had no cause to consider the *Kessler* doctrine or the basis for that doctrine, *i.e.*, the strong interest in preventing parties from getting a second chance at an infringement suit against products that have been found not to infringe.

---

[3] Barnes & Noble preserves the right to move at a future date for summary judgment based on the persuasive value that should be accorded to the ITC judgment. Barnes & Noble also preserves an argument that the Federal Circuit decisions regarding res judicata and collateral estoppel, which have never been confirmed by the Supreme Court, are erroneous, though Barnes & Noble recognizes that they are binding on this Court.

[4] One case did involve a finding of non-infringement. *Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301 (Fed. Cir. 2011). But as discussed below, that case in fact confirms that there are circumstances under which an ITC decision will be binding in later proceedings. In *Powertech*, the Federal Circuit held that the ITC's decision, as affirmed by the Federal Circuit, was binding as a matter of stare decisis. *Id.* at 1303-04, 1308. The Federal Circuit did not consider whether the *Kessler* doctrine provided an additional basis for holding that the finding of non-infringement was binding.

The Federal Circuit case law on res judicata and collateral estoppel is also inapposite because the *Kessler* doctrine was created for the exact purpose of "fill[ing] the gaps" when res judicata or collateral estoppel are inapplicable but the party should still be bound. *Brain Life*, 746 F.3d at 1056; *see also SpeedTrack*, 2014 WL 1813292, at *9. Indeed, the *Kessler* doctrine is a special rule for patents given the particular interest there in preventing unfair harassment of competitors and uncertainty in the marketplace with multiple infringement suits. Res judicata and collateral estoppel are general doctrines that apply to all subject matters, and thus do not take account of this particular interest in patent cases.

### C. TPL Cannot Evade the Binding Effect of an ITC Finding of Non-Infringement by Choosing Not to Appeal

It is well established that an ITC decision *is* binding when the Federal Circuit decides an appeal from that decision. As the Federal Circuit has explained:

> TI also argues that by our denying preclusive effect to ITC determinations and to our decisions in appeals from ITC decisions, district courts would be free to ignore our decisions. That is not correct. District courts are not free to ignore holdings of this court that bear on cases before them. Subsequent panels of this court are similarly not free to ignore precedents set by prior panels of the court.

*Texas Instruments*, 90 F.3d at 1569. The Federal Circuit has recently reiterated that "[a]lthough the resolution of the ITC action will not have preclusive effect on . . . the district court in this case," the court is "nonetheless bound by stare decisis to abide by any legal precedents established by our court in" its decision affirming the ITC's finding of non-infringement. *Powertech*, 660 F.3d at 1308; *see also id.* ("To the extent Tessera's claims against PTI's customers arise from the same set of facts addressed in *Tessera*, the result we reached there would control equally here. Accordingly, we vacate the dismissal on jurisdictional grounds and remand with instructions to apply our decision in *Tessera*.").

TPL attempted to get around this binding effect of stare decisis by choosing not to appeal, but a party cannot evade an ITC ruling in this way. The Federal Circuit has never suggested otherwise because in all of the cases regarding the binding effect of ITC rulings, there was an appeal from the ITC judgment. *See Powertech*, 660 F.3d at 1307; *Texas Instruments*, 90 F.3d at 1563; *Bio-Tech. Gen. Corp.*, 80 F.3d at 1563. Indeed, there is no reasonable basis to allow a party

to evade an ITC judgment by strategically choosing not to appeal an ITC judgment of non-infringement simply to start from scratch in district court.

First, courts consistently refuse to give a party the benefit of a tactical decision not to appeal. For example, the Supreme Court has held that a party that makes "a considered choice not to appeal . . . cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong . . . ." *Ackermann v. United States*, 340 U.S. 193, 198 (1950). In another case, the Supreme Court held that respondents could not become "windfall beneficiaries of an appellate reversal procured by other independent parties" where the respondents "made a calculated choice to forgo their appeals." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 400-01 (1981); *see also, e.g.*, *Twelve John Does v. Dist. of Columbia*, 841 F.2d 1133, 1141 (D.C. Cir. 1988) ("[W]here the parties seeking relief have made a 'free, calculated, deliberate' decision not to appeal, Rule 60(b)(6) is simply not available to relieve them of the consequences of that decision, absent extraordinary circumstances."). This simply reflects the general principle that a party's failure to appeal a particular determination bars later relitigation of that issue. *See e.g.*, *Function Media, L.L.C. v. Kappos*, 508 F. App'x 953, 956 (Fed. Cir. 2013) ("Google's failure to appeal the determined validity of those claims removed them from any subsequent actions."); *EFCO Corp. v. U.W. Marx, Inc.,* 124 F.3d 394, 399-400 (2d Cir. 1997) ("Where a plaintiff's motion to amend its complaint in the first action is denied, and plaintiff fails to appeal the denial, res judicata applies to the claim sought to be added in the proposed amended complaint."). In particular, in the administrative context, the decision not to appeal to an Article III court does not deprive the administrative judgment of binding effect. *See, e.g.*, *McLellan v. Perry*, No. 3:12-CV-00391-MMD, 2014 WL 1309291, at *5 (D. Nev. Mar. 27, 2014) ("McLellan's contention that the unreviewed determination of the Hearing Officer cannot have a preclusive effect is contrary to established law. . . . [T]he claim was litigated at the agency and became final when McLellan chose not to appeal to the state district court."). Here, likewise, the binding effect of the ITC judgment should not be undermined by TPL's decision to forego an appeal.

Second, the reasoning in the *Kessler* line of cases demonstrates that a decision not to appeal is an illegitimate basis to avoid what would be an otherwise binding judgment. For instance, in *Brain Life*, the patentee argued that because he abandoned some of the claims before trial in the first suit, he should be able to relitigate those claims. The court rejected that argument, holding: "Simply, by virtue of gaining a final judgment of noninfringement in the first suit—where all of the claims were or *could have been asserted* against Elekta—the accused devices acquired a status as noninfringing devices, and Brain Life is barred from asserting that they infringe the same patent claims a second time." 746 F.3d at 1058 (emphasis added); *see also id.* at 1058-59 ("Brain Life instead focuses its efforts on demonstrating that the patent claims in the two suits are not essentially the same. That is beside the point under the *Kessler* Doctrine because Elekta's . . . products have acquired the status of noninfringing products as to the ′684 *patent*, i.e., all claims that were brought or *could have been brought* in the first suit." (emphasis added)). This Court similarly recognized in *SpeedTrack* that what matters under *Kessler* are the arguments the plaintiff could have pursued, regardless of whether it actually did so. *See* 2014 WL 1813292, at *9 ("Certainly, if the *Kessler* doctrine bars the assertion of new *claims*, it must also bar the assertion of new *theories* involving the same, already-asserted claims."). Simply put, once a product is given a status of a non-infringing product as to a certain patent, that status cannot be undone by arguments about what a plaintiff might have done differently in the first suit. This logic applies equally to the decision not to appeal – what matters is that TPL could have brought all of its arguments to the Federal Circuit, and its choice not to do so cannot undermine the binding effect of the ITC judgment.

Finally, *Kessler* was designed as a policy matter to ensure fairness to makers of products adjudged to be non-infringing, and the policies at issue here uniformly support giving binding effect to the ITC judgment. TPL filed suit in this Court and in the ITC on the same day with the same alleged basis for infringement. In the ITC proceeding, TPL had every incentive to – and in fact did – make its very best arguments for infringement. Accordingly, this case is nothing more than a second chance for TPL to pursue claims on which it already failed in another forum and to force Barnes & Noble to defend itself again after being forced to expend substantial sums in

defending itself in the ITC—a prime example of harassment. The proper way for TPL to challenge that decision would have been an appeal to the Federal Circuit, not to attack it indirectly (or otherwise ignore it) in this Court. Such an indirect challenge is especially inefficient for the parties and the Court given that the ultimate review in this matter would also rest with the Federal Circuit. And if allowed, it would wrongfully encourage parties not to appeal in the hope of receiving a different opinion from another forum, which they could still appeal if unsuccessful.

## CONCLUSION

For the foregoing reasons, Barnes & Noble, Inc. respectfully requests that the Court grant this motion in accordance with Rule 12(c) and enter judgment on the pleadings, dismissing Plaintiffs' third cause of action with prejudice.

DATED: February 4, 2015

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ David Eiseman*
David Eiseman
Attorney for Defendant Barnes & Noble, Inc.