QUINN EMANUEL URQUHART & SULLIVAN, LLP
  David Eiseman (Bar No. 114758)
    davideiseman@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California  94111-4788
Telephone:     (415) 875-6600
Facsimile:      (415) 875-6700

Attorney for Defendant Barnes & Noble, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TECHNOLOGY PROPERTIES LIMITED LLC, et al.,<br><br>            Plaintiffs,<br><br>     vs.<br><br>BARNES & NOBLE, INC.,<br><br>            Defendant. | CASE NO. 12-cv-03863-VC<br><br>DEFENDANT BARNES & NOBLE, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>Date:  March 17, 2015<br>Time: 10:00 am<br>Place: Courtroom 5 – 4th Floor<br>Judge: Hon. Paul S. Grewal |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    THE *KESSLER* DOCTRINE BARS TPL FROM RELITIGATING WHETHER
    BARNES & NOBLE'S NOOK PRODUCTS INFRINGE THE '336 PATENT................... 2

    A.    The *Kessler* Doctrine Prevents TPL from Relitigating a Finding of Non-
          Infringement ................................................................................................................ 2

    B.    Neither Congress Nor the Federal Circuit Has Addressed Whether an ITC
          Judgment of Non-Infringement Is Binding ................................................................. 4

    C.    TPL Cannot Evade the Binding Effect of an ITC Finding of Non-
          Infringement by Choosing Not to Appeal .................................................................. 6

CONCLUSION .............................................................................................................................. 8

# TABLE OF AUTHORITIES

**Page**

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
    80 F.3d 1553 (Fed. Cir. 1996) ................................................................................................ 4

*Brain Life, LLC v. Elekta Inc.*,
    746 F.3d 1045 (Fed. Cir. 2014) ..................................................................................... 2, 4, 6

*HTC v. TPL*,
    No. 5:08-cv-00882-PSG (N.D. Cal.) ...................................................................................... 7

*Kessler v. Eldred*,
    206 U.S. 285 (1907) ..................................................................................................... passim

*MGA, Inc. v. General Motors Corp.*,
    827 F.2d 729 (Fed. Cir. 1987) ................................................................................................ 3

*SpeedTrack, Inc. v. Office Depot, Inc.*,
    No. C 07-3602 PJH, 2014 WL 1813292 (N.D. Cal. May 6, 2014) ........................................ 6

*Tandon Corp. v. U.S. Int'l Trade Comm'n*,
    831 F.2d 1017, 1019 (Fed. Cir. 1987) .................................................................................... 5

*Texas Instruments v. Cypress Semiconductor Corp.*,
    90 F.3d 1558 (Fed. Cir. 1996) ................................................................................................ 4

## Miscellaneous

S. Rep. No. 1298, 93d Cong., 2d Sess. 196 (1974) ....................................................................... 5

**PRELIMINARY STATEMENT**

The opposition brief ("Opp.") of Plaintiffs Technology Properties Limited, Phoenix Digital Solutions, and Patriot Scientific Corporation ("TPL") does not provide any actual reason – as a matter of fairness, efficiency, or anything else – why this Court should permit it to harass Barnes & Noble by relitigating its case against the NOOK products in this Court after losing in the ITC and choosing not to appeal. TPL had every chance to prove its case in the ITC, and it failed to do so. TPL could have appealed that decision to the Federal Circuit, but chose not to. This Court should not allow TPL to put Barnes & Noble through another lengthy, expensive proceeding to re-establish the company's right to sell NOOKs without infringing TPL's '336 patent. The language and principles underlying *Kessler v. Eldred*, 206 U.S. 285 (1907), require dismissal.

*Kessler* by its terms applies to any "court of competent jurisdiction" and "wherever the judgment is entitled to respect," *id.* at 289, both of which indisputably cover the ITC's decision here. TPL ignores this crucial language. Moreover, there is no dispute that appeals from ITC decisions are binding, and thus, the question is not whether an ITC judgment can be binding – it plainly can if affirmed on appeal – but whether a party can render it non-binding by strategically choosing to forgo an appeal. TPL provides no reason why this case should be an exception to the well-established rule that a party cannot avoid the binding effect of a judgment by choosing not to appeal it.

Rather than confront these points, TPL suggests that the Federal Circuit has already decided the issue. But as Barnes & Noble pointed out in its opening brief, it has not. TPL fails to address the fact that *none* of the Federal Circuit cases held an ITC judgment of non-infringement to be non-binding, and thus none had any reason to consider the *Kessler* doctrine. Similarly, TPL's suggestion that "B&N has cited no case – because there is none – in which a court applied the *Kessler* doctrine to bar a district court case based on a decision from the ITC," Opp. at 10, is unavailing. It is equally true that TPL has cited no case that rejected application of the *Kessler* doctrine to an ITC decision (or to the decision of any tribunal). Given the lack of precedent on either side, this Court must decide whether the language and reasoning of *Kessler* apply here. The

1  answer is straight-forward:  Every bit as much as a federal court (and far more than a state court,
2  to which the Federal Circuit still applied *Kessler*), the ITC has jurisdiction and competence to
3  decide the issue of non-infringement, and companies should not have to re-defend their products
4  from the same infringement allegations when a losing ITC complainant fails to appeal to the
5  Federal Circuit.  Indeed, the Supreme Court created the *Kessler* doctrine precisely to prevent the
6  kind of harassment that TPL is attempting to inflict here with a second suit after a judgment of
7  non-infringement.

## ARGUMENT

### THE *KESSLER* DOCTRINE BARS TPL FROM RELITIGATING WHETHER BARNES & NOBLE'S NOOK PRODUCTS INFRINGE THE '336 PATENT

#### A. The *Kessler* Doctrine Prevents TPL from Relitigating a Finding of Non-Infringement

The express language of *Kessler* establishes that the *Kessler* doctrine applies here.  In *Kessler*, the Supreme Court held that a prior judgment of non-infringement, "whether it proceeds upon good reasons or upon bad reasons, whether it was right or wrong, settle[s] finally and everywhere" the claim of infringement.  206 U.S. at 288.  And the Court stated exactly which tribunals could create a binding judgment of non-infringement:  "If rights between litigants are once established by the final judgment of a *court of competent jurisdiction* those rights must be recognized in every way, and *wherever the judgment is entitled to respect*, by those who are bound by it."  *Id.* at 289 (emphases added).  As discussed in Barnes & Noble's motion, the ITC is plainly a "court of competent jurisdiction" and its "judgment is entitled to respect."  Defendant Barnes & Noble, Inc.'s Motion for Judgment on the Pleadings ("Mot.") at 6.  TPL does not dispute these points and provides no response at all to this binding language in *Kessler*.

Furthermore, the principle underlying *Kessler* applies equally to the ITC's decision here as it does to the judgment of any other tribunal.  The rationale of the *Kessler* doctrine is that a patentee should not be able to harass another party by repeatedly filing infringement suits after getting a final judgment of non-infringement.  *See* Mot. at 7-8; *see also Kessler*, 206 U.S. at 290; *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1055-56 (Fed. Cir. 2014).  Yet that is exactly what

is happening here. TPL brought its claim in the ITC, it lost, it chose not to appeal, and it is instead pursuing the exact same claim in this Court. The wasteful, costly, and harassing effect of this attempt to relitigate the judgment of non-infringement is exactly the same as it would be if the first suit were filed in a different federal court rather than the ITC. TPL provides no argument to the contrary.

Indeed, the rationale for applying the *Kessler* doctrine here is considerably stronger than in *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729 (Fed. Cir. 1987), where the Federal Circuit applied the doctrine to a state court judgment. *See* Mot. at 6. TPL argues that *MGA* is inapposite because it did not involve an ITC decision. *See* Opp. at 11. But this difference actually makes it *more* clear that the *Kessler* doctrine applies here. In *MGA*, the Federal Circuit applied the *Kessler* doctrine because the plaintiff "had its day in court with a full trial on the merits of its case." 827 F.2d at 735. The same is true here. But unlike the state court in *MGA*, which has no expertise and generally no jurisdiction over patent claims, the ITC has considerable expertise and undisputed jurisdiction. Moreover, unlike the state court, an appeal from the ITC goes to the Federal Circuit, the same court that would decide the issue from any federal court. Simply put, there is no logical reason why a state court determination of non-infringement would be binding, but an ITC judgment of non-infringement would not.

TPL identifies only one distinction between the ITC and other tribunals: that the ITC cannot award damages. Opp. at 3, 5, 9 n.4. However, TPL fails to explain how the ITC's limitation to injunctive relief is relevant to *Kessler*'s analysis that a patentee should not be able to harass another party with multiple suits after a judgment of non-infringement.[1] Similarly, the

---

[1] TPL notes that the nature of the remedies available does affect entitlement to preclusion under res judicata. Opp. at 5. That makes sense because res judicata would completely bar a second suit, even if the patentee were successful in proving infringement in the ITC, thereby preventing the patentee from receiving damages under any circumstances. That logic is inapplicable here because the *Kessler* doctrine bars a second suit *only* for a finding of non-infringement, so the doctrine would not foreclose damages available in federal court for any successful infringement claim in the ITC.

form of relief is irrelevant to *Brain Life*'s analysis that a judgment of non-infringement means that a challenged product "acquires the 'status' of a noninfringing device." 746 F.3d at 1057. TPL does not argue that the limitation to injunctive relief affected the arguments it presented to the ITC on non-infringement or the ITC's analysis of those arguments – because it did not. TPL took its best shot, lost, and chose not to appeal.

TPL also suggests that preclusion is unfair because the defendants requested a stay of this action in favor of the ITC action. *See* Opp. at 7. In fact, the parties jointly requested the stay here. *See* Dkt. 9. In any event, the stay is irrelevant because regardless of which case went first, the issue ultimately would have ended up in the same place – the Federal Circuit – had TPL exercised its right to appeal.

### B. Neither Congress Nor the Federal Circuit Has Addressed Whether an ITC Judgment of Non-Infringement Is Binding

Instead of discussing the applicability of the language or analysis in *Kessler*, TPL relies on the idea that Federal Circuit case law forecloses this motion. Opp. at 4-6. It does not. None of the cases TPL cites considered the *Kessler* doctrine. Mot. at 7. TPL suggests that this omission is telling, *see* Opp. at 11 & n.5, but as Barnes & Noble previously pointed out, there was no reason to consider *Kessler* before because none of these cases involved a finding of non-infringement (aside from one case where an appealed ITC judgment was held *binding* as a matter of stare decisis). Mot. at 7 & n.4. Thus, there is no Federal Circuit law that even suggests, let alone holds, that an ITC judgment of non-infringement is not binding.[2] Once again, TPL simply ignores this point.

---

[2] While TPL block-quotes extensive passages from Federal Circuit cases saying that ITC decisions do not have preclusive effect, Opp. at 5-6, those passages plainly refer only to claim preclusion and issue preclusion, *i.e.*, res judicata and collateral estoppel. *See Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568 n.9 (Fed. Cir. 1996) ("Our analysis here is limited to the doctrine of issue preclusion."); *Bio-Technology General Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1564 (Fed. Cir. 1996) ("The legislative history of the Trade Reform Act of 1974 supports the view that ITC decisions with respect to patent issues should have no *claim preclusive* effect in later district court litigation. … Thus, in view of the jurisdictional limitations on the relief
   (footnote continued)

TPL also errs in arguing that Congress has said that ITC decisions should not be binding. To begin with, while TPL purports to rely on "Congress" and "statutory" authority, Opp. at 4, what it actually relies upon is a Senate Report.[3] Moreover, that Senate Report – just like the Federal Circuit precedent that cites it – by its terms applies only to the specific doctrines of res judicata and collateral estoppel: "[A]ny disposition of a Commission action by a Federal Court should not have a res judicata or collateral estoppel effect in cases before such courts." S. Rep. No. 1298, 93d Cong., 2d Sess. 196 (1974). This statement is therefore inapplicable to the *Kessler* doctrine. Also, the Senate Report's basis for this statement was the point that "the Commission is not, of course, empowered under existing law to set aside a patent as being invalid or to render it unenforceable," *id.*, a point that is irrelevant to a finding of non-infringement. Indeed, other language in the Senate Report made clear that "[i]t was the intent of Congress that greater weight and finality be accorded to the Commission's findings as compared with those of a trial court." *Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1019 (Fed. Cir. 1987) (citing S. Rep. No. 466, 96th Cong., 1st Sess. 26 (1979)). In short, there is nothing in the statute that governs the issue, and the Senate Report does not consider the *Kessler* doctrine or findings of non-infringement. Indeed, TPL's theory suggests that Congress had the very specific and peculiar intent to have ITC decisions not be binding except when appealed to the Federal Circuit, at which point they would be binding. There is nothing in the statute to suggest that Congress intended this result.

Finally, the fact that the Federal Circuit and the Senate Report have determined that res judicata and collateral estoppel do not apply cannot dictate whether the *Kessler* doctrine does apply. The *Kessler* doctrine was created for the exact purpose of "fill[ing] the gaps" when res judicata or collateral estoppel are inapplicable but the party should still be bound based on the

---

available in the ITC, we hold that the ITC's prior decision cannot have *claim preclusive* effect in the district court.") (emphases added).

[3] The statute at issue is 19 U.S.C. § 1337, and it says nothing at all about the preclusive effect of an ITC decision.

particular interests at stake in preventing unfair harassment with multiple infringement suits. *Brain Life*, 746 F.3d at 1056; *see also SpeedTrack, Inc. v. Office Depot, Inc.*, No. C 07-3602 PJH, 2014 WL 1813292, at *9 (N.D. Cal. May 6, 2014).  TPL says collateral estoppel would apply here if Congress had not barred it, Opp. at 9-10, then immediately contradicts that argument by stating that collateral estoppel would not apply anyway, *id.* at 9 n.4.  In any event, whether barred as a matter of common law or by the Senate Report, the unavailability of collateral estoppel fits exactly the point of the *Kessler* doctrine: to recognize preclusion where collateral estoppel does *not* apply, in the limited context of a judgment of non-infringement.  Had TPL appealed, stare decisis would have "filled the gap" by closing the loophole TPL seeks to exploit.  Thus, contrary to TPL's argument that there is no "gap" to fill here, Opp. at 9, there is a gap and TPL caused it.  Moreover, a gap exists here every bit as much as it did in *Kessler* and *Brain Life* because collateral estoppel is unavailable despite the fact that there is an adverse judgment involving the same claim that the parties already spent considerable resources litigating before a competent tribunal.  The reason why collateral estoppel does not apply is irrelevant to whether preclusion under *Kessler* does apply.  And even if the reason did matter, as discussed above, the reason given in the Senate Report is inapplicable to a finding of non-infringement.

### C. TPL Cannot Evade the Binding Effect of an ITC Finding of Non-Infringement by Choosing Not to Appeal

TPL's arguments fail entirely to address the fact that an ITC decision *is* binding, as a matter of stare decisis, when the Federal Circuit decides an appeal from that decision.  Mot. at 8.  Thus, contrary to TPL's assertion that the *Kessler* doctrine would "swallow[] the congressionally mandated rule" against preclusion from ITC decisions, Opp. at 11, *Kessler* would apply *only* to an ITC judgment of non-infringement and *only* where the patentee chose not to appeal – since the ITC's decision is already binding after an appeal.  Conversely, the only result of adopting TPL's argument is that it will allow a party to evade an adverse ITC judgment by choosing not to appeal.  Yet that result is in direct conflict with the well-established principle that a party should not be able to avoid the binding effect of a judgment by its choice not to appeal.

There is no legal or practical basis to allow a party to evade an ITC judgment of non-infringement by strategically choosing not to appeal, simply to start from scratch in district court. TPL does not dispute or distinguish any of the case law establishing that courts consistently refuse to give a party the benefit of a tactical decision not to appeal, including an appeal from an administrative tribunal that could have gone to an Article III court. Mot. at 9 (citing cases). Instead, TPL's only response seems to be that its decision not to appeal was not a strategic judgment, but rather a matter of timing. *See* Opp. at 3.

However, the facts belie this assertion for three reasons. First, based on average length of a Federal Circuit appeal of 14.4 months, *see* Opp. at 3 n.2, the appeal from the ITC's February 2014 judgment would have been completed in time for TPL to get an injunction before the September 2015 expiration of the patent. Moreover, the average time could almost certainly have been shortened if, for example, TPL moved for an expedited appeal or simply filed its brief before the due date. Thus, there was no serious risk that the appeal would have been moot. Second, under TPL's logic, there was barely any point in bringing the ITC action at all, since the ITC decision came only one-and-a-half years before the expiration of the patent. Indeed, even if TPL had prevailed in the ITC, there would have been an appeal from the alleged infringers, and thus it was inevitable that there would have been only a short time between the ultimate decision on an injunction and the expiration of the patent. Third, TPL had a strong incentive to appeal because (regardless of the *Kessler* issue) the Federal Circuit's decision would have been binding in this case as a matter of stare decisis. Thus, TPL could have gotten the definitive claim construction that instead it seeks to litigate here, which will still end up in the Federal Circuit if any of the parties choose to appeal.[4] The only benefit to TPL in creating this circuitous route to the Federal

---

[4] TPL also avoided a definitive decision by settling an appeal in *HTC v. TPL*, No. 5:08-cv-00882-PSG (N.D. Cal.). While TPL praises the district court's decision in the *HTC* case, Opp. at 2-3, TPL does not argue that the decision should have any effect on this case, and for good reason: Barnes & Noble was not a party to that case, and there is no stare decisis effect because the appeal was settled.

Circuit is that it drives up litigation costs. Simply put, TPL's decision not to appeal is exactly the sort of gamesmanship that courts routinely disallow and this Court should likewise reject.

## CONCLUSION

For the foregoing reasons and the reasons stated in its opening brief, Barnes & Noble, Inc. respectfully requests that the Court grant this motion in accordance with Rule 12(c) and enter judgment on the pleadings, dismissing Plaintiffs' third cause of action with prejudice.

DATED: February 25, 2015            QUINN EMANUEL URQUHART &
                                    SULLIVAN, LLP


                                    By */s/ David Eiseman*
                                       David Eiseman
                                       Attorney for Defendant Barnes & Noble, Inc.

# **CERTIFICATE OF SERVICE**

I hereby certify that, on February 25, 2015, I caused the foregoing document to be served on counsel of record via the Court's CM/ECF system.

Dated:  February 25, 2015

By */s/ David Eiseman*
David Eiseman