1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
      David Eiseman (Bar No. 114758)
2        davideiseman@quinnemanuel.com
    50 California Street, 22nd Floor
3  San Francisco, California  94111-4788
    Telephone:    (415) 875-6600
4  Facsimile:    (415) 875-6700

5  Attorney for Defendant Barnes & Noble, Inc.

6

7                    UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9                      SAN FRANCISCO DIVISION

10

11  TECHNOLOGY PROPERTIES LIMITED          CASE NO. 12-cv-03863-VC
    LLC, et al.,
12                                          DEFENDANT BARNES & NOBLE, INC.'S
                  Plaintiffs,               NOTICE OF MOTION AND MOTION FOR
13                                          DE NOVO DETERMINATION OF
            vs.                             DISPOSITIVE MATTER REFERRED TO
14                                          MAGISTRATE JUDGE
    BARNES & NOBLE, INC.,
15                                          Date:   July 23, 2015
                  Defendant.               Time:   10:00 a.m.
16                                          Place:  Courtroom 4 - 17th Floor
                                           Judge:  Hon. Vince Chhabria
17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on July 23, 2015, at 10:00 am, or as soon thereafter as counsel may be heard before the Honorable Vince Chhabria in Courtroom 4 of the above-entitled Court, located at 450 Golden Gate Avenue, 17ᵗʰ Floor, San Francisco, CA 94102, Defendant Barnes & Noble, Inc. ("Barnes & Noble") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 72(b), for a de novo determination of Magistrate Judge Grewal's Report and Recommendation denying Barnes & Noble's motion for judgment on the pleadings with respect to Plaintiffs' third cause of action.  This motion and the objections to Judge Grewal's ruling are made on the following ground:  Plaintiffs' third cause of action is barred by the *Kessler* doctrine because the ITC found that Barnes & Noble did not infringe U.S. Patent No. 5,809,336, and Plaintiffs chose not to appeal this decision to the Federal Circuit.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the pleadings and papers on file in this action or deemed to be on file at the time this Motion is heard, other such evidence and argument as may be presented in connection with the hearing of this Motion, and all matters of which this Court may take judicial notice.


DATED:  June 15, 2015                    QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP



                                         By*/s/ David Eiseman*
                                            David Eiseman
                                            Attorney for Defendant Barnes & Noble, Inc.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF ISSUE TO BE DECIDED ......................................................................... 3

STATEMENT OF FACTS ...................................................................................................... 3

      A.    TPL's Complaint in this Court ................................................................. 3

      B.    TPL's Complaint in the ITC ..................................................................... 3

      C.    The ITC Decision ..................................................................................... 4

      D.    The Magistrate Judge's Report and Recommendation ............................ 4

ARGUMENT ......................................................................................................................... 5

I.      LEGAL STANDARD ................................................................................................. 5

II.     THE *KESSLER* DOCTRINE BARS TPL FROM RE-LITIGATING WHETHER BARNES & NOBLE'S NOOK PRODUCTS INFRINGE THE '336 PATENT ................. 5

      A.    The *Kessler* Doctrine Prevents Parties from Relitigating a Finding of Non-Infringement ...................................................................................... 5

      B.    The *Kessler* Doctrine Bars TPL's Claims in Light of the ITC's Finding of Non-Infringement ................................................................................ 7

      C.    TPL Cannot Evade the Binding Effect of an ITC Finding of Non-Infringement by Choosing Not to Appeal ......................................... 12

CONCLUSION .................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page**

### <u>Cases</u>

*Ackermann v. United States*,
    340 U.S. 193 (1950) ................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................5

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
    80 F.3d 1553 (Fed. Cir. 1996) ............................................10, 13

*Brain Life, LLC v. Elekta Inc.*,
    746 F.3d 1045 (Fed. Cir. 2014) ...........................6, 7, 9, 10, 13

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S. Ct. 1920 (2015) ...............................................................9

*Dworkin v. Hustler Magazine Inc.*,
    867 F.2d 1188 (9th Cir. 1989) ...................................................5

*eBay, Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ...................................................................9

*Federated Dep't Stores, Inc. v. Moitie*,
    452 U.S. 394 (1981) .................................................................13

*Function Media, L.L.C. v. Kappos*,
    508 F. App'x 953 (Fed. Cir. 2013) ..........................................13

*Harris v. County of Orange*,
    682 F.3d 1126 (9th Cir. 2012) ...................................................5

*Kessler v. Eldred*,
    206 U.S. 285 (1907) ....................................................... passim

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
    633 F.3d 1158 (9th Cir. 2011) ...................................................8

*Lyon v. Chase Bank USA, NA*,
    656 F.3d 877 (9th Cir. 2011) .....................................................5

*MGA, Inc. v. General Motors Corp.*,
    827 F.2d 729 (Fed. Cir. 1987) ............................................11, 12

*McLellan v. Perry*,
    No. 3:12-CV-00391-MMD, 2014 WL 1309291 (D. Nev. Mar. 27, 2014) ................................13

*Milner v. Dep't of Navy*,
    562 U.S. 562 (2011) ...................................................................................................8

*Mohamad v. Palestinian Authority*,
    132 S. Ct. 1702 (2012) ...............................................................................................8

*Powertech Tech. Inc. v. Tessera, Inc.*,
    660 F.3d 1301 (Fed. Cir. 2011) ..............................................................10, 11, 12, 13

*Ratzlaf v. United States*,
    510 U.S. 135 (1994) ...................................................................................................8

*SpeedTrack, Inc. v. Office Depot, Inc.*,
    No. C 07-3602 PJH, 2014 WL 1813292 (N.D. Cal. May 6, 2014) ...................6, 7, 13

*Tandon Corp. v. U.S. Int'l Trade Comm'n*,
    831 F.2d 1017 (Fed. Cir. 1987) ..................................................................................8

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
    135 S. Ct. 831 (2015) ...........................................................................................9, 11

*Texas Instruments v. Cypress Semiconductor Corp.*,
    90 F.3d 1558 (Fed. Cir. 1996) ..................................................................10, 12, 13

## Statutes

19 U.S.C. § 1337 .................................................................................................................7

Fed. R. Civ. P. 12(b)..........................................................................................................5

Fed. R. Civ. P. 12(c)..........................................................................................................5, 15

Fed. R. Civ. P. 72(b)..........................................................................................................1, 5

S. Rep. No. 1298, 93d Cong., 2d Sess. 196 (1974) ...........................................................8

S. Rep. No. 466, 96th Cong., 1st Sess. 26 (1979) .............................................................8

## PRELIMINARY STATEMENT

When they initiated this suit, Plaintiffs Technology Properties Limited, Phoenix Digital Solutions, and Patriot Scientific Corporation ("TPL" or "Plaintiffs") also initiated an ITC investigation on the basis of alleged infringement of U.S. Patent No. 5,809,336 ("the '336 Patent") and sought an exclusion order barring importation of the Barnes & Noble NOOK products that TPL accuses of infringing the '336 Patent in this suit. The parties jointly requested, and this Court granted, a stay pending the outcome of the ITC investigation. Now, TPL's infringement claim regarding the '336 Patent should be dismissed because the ITC has ruled that Barnes & Noble's NOOK products do not infringe the '336 Patent, and that finding is binding on this Court under the doctrine of *Kessler v. Eldred*, 206 U.S. 285 (1907).

*Kessler* held that a finding of non-infringement precludes relitigation even where that finding would not be the basis for res judicata or collateral estoppel. *Kessler* by its terms applies to any "court of competent jurisdiction" and "wherever the judgment is entitled to respect," 206 U.S. at 289, both of which plainly cover the ITC's decision here. The ITC has jurisdiction to resolve the question of infringement. It conducted a thorough investigation after extensive briefing. The ALJ reached a carefully reasoned opinion finding non-infringement on multiple grounds. The full Commission affirmed the non-infringement determination. TPL could have, but chose not to, appeal that decision to the Federal Circuit. Thus, TPL had every opportunity to prove infringement in a competent tribunal and ultimately to the court that would hear an appeal in this case. TPL should not get another chance simply because it would like to try again in another forum. Every bit as much as a federal court (and far more than a state court, to which the Federal Circuit still applied *Kessler*), the ITC has jurisdiction and competence to decide the issue of non-infringement. Companies should not have to re-defend their products against the same infringement allegations when a losing ITC complainant fails to appeal to the Federal Circuit. Indeed, the Supreme Court created the *Kessler* doctrine precisely to prevent the kind of harassment that TPL is inflicting here with a second suit accusing the same products the ITC has already finally determined do not infringe.

Magistrate Judge Grewal's Report and Recommendation ("R&R") is incorrect in concluding that *Kessler* is inapplicable to ITC judgments. The R&R purports to rely on "Congress' explicit findings" that ITC judgments are not entitled to respect. R&R at 7. But Congress made no such findings, and, in fact, the statute makes clear that ITC decisions are enforceable judgments. The only source the R&R cites for Congress's putative findings to the contrary is a Senate Report, which suggests only that res judicata and collateral estoppel do not apply to ITC judgments. The Senate Report makes no mention of the *Kessler* doctrine or the binding effect of an ITC judgment of non-infringement, and could not override the clear language of the statute in any event. There is no legal basis for treating this legislative history, which lacks statutory support and is silent on the operative question, as a congressional decision to forego the long-established *Kessler* doctrine. The R&R also errs in relying on Federal Circuit precedent to conclude that the *Kessler* doctrine is inapplicable, when none of those cases considered – or had any reason to consider – its applicability. Indeed, the R&R does not provide any actual reason – as a matter of fairness, efficiency, or anything else – why this Court should permit TPL to harass Barnes & Noble by relitigating its case against the NOOK products in this Court after losing in the ITC and choosing not to appeal. TPL had every chance to prove its case in the ITC, and it failed to do so. TPL could have appealed that decision to the Federal Circuit, but chose not to. The *Kessler* doctrine does not allow, and this Court accordingly should not allow, TPL to put Barnes & Noble through another lengthy, expensive proceeding to re-establish the company's right to sell NOOKs free of alleged infringement of TPL's '336 Patent.

Furthermore, there is no dispute that appeals from ITC decisions are binding as a matter of stare decisis, and thus, the question is not whether an ITC judgment can be binding – it plainly is binding if affirmed on appeal – but whether a party can render it non-binding by choosing to forgo an appeal. The R&R suggests that the timing of the expiration of the '336 Patent provides an exception to the well-established rule that a party cannot avoid the binding effect of a judgment by choosing not to appeal it. There is no legal support for any such exception, though, and no factual support for the idea that TPL had insufficient incentive to appeal to the Federal Circuit.

## STATEMENT OF ISSUE TO BE DECIDED

Does the *Kessler* doctrine bar TPL's claims for infringement of the '336 Patent because the ITC has already found that Barnes & Noble's NOOK products do not infringe that patent, and TPL chose not to appeal that decision to the Federal Circuit?

## STATEMENT OF FACTS

### A.  TPL's Complaint in this Court

On July 24, 2012, TPL brought suit against Barnes & Noble for alleged infringement of three patents.  *See* Compl. ¶¶ 19-33.  This motion concerns one of the three patents, U.S. Patent No. 5,809,336, entitled "High Performance Microprocessor Having Variable Speed Clock" ("the '336 Patent").  Specifically, TPL's Complaint alleges that Barnes & Noble's NOOK devices – electronic readers (eReaders) and tablets – infringe the '336 Patent because they have a "USB input/output interface for connecting the accused device to a peripheral device . . . having a clock independent of the CPU clock (*e.g.*, ring oscillator) connected to the central processing unit on the microprocessor of the NOOK . . . ."  *Id.* ¶ 30.

### B.  TPL's Complaint in the ITC

On the same day that it initiated this suit, TPL also initiated an ITC investigation against numerous companies on the basis of alleged infringement of the '336 Patent.[1]  The operative allegation of infringement at the ITC is exactly the same allegation set forth in TPL's Complaint in this Court, with TPL claiming that the NOOK infringes because it has a "USB input/output interface for connecting the accused device to a peripheral device . . . having a clock independent of the CPU clock (*e.g.*, ring oscillator) connected to the central processing unit on the microprocessor of the NOOK."  *Id.* ¶ 59.  The parties jointly sought and the Court granted a stay of this case pending the outcome of the ITC investigation.  (Dkt. 12.)

---

[1]  *Certain Wireless Consumer Electronics and Components Thereof*, Inv. No. 337-TA-853. This Court has granted a motion for transmission of the ITC record to the Court.  (Dkt. 36.)  The public version of the ITC opinion is available on the ITC's EDIS system (http://edis.usitc.gov).

### C.      The ITC Decision

Trial in the ITC investigation began on June 3, 2013, and concluded on June 11, 2013.  On September 6, 2013, Administrative Law Judge E. James Gildea issued his final decision, which is termed the Initial Determination ("ID") in the Investigation, concluding that there has been no violation of Section 337 by any Respondent, including Barnes & Noble, for the reason that Respondents' products do not infringe any asserted claim of the '336 Patent.  *See* ID at iv.  The ALJ conducted hearings that included expert testimony on the claims at issue, fact evidence from corporate witnesses regarding the products and chips at issue, and dozens of exhibits from both sides.  *See, e.g.*, *id.* at 3, 25, 35-36, 118, Appendix B.  After careful consideration of the private parties' and Commission Investigative Staff's post-hearing briefs, the ALJ issued an opinion more than 300 pages long, examining the claims at issue and concluding that there was no infringement.  The ID reflects an exhaustive and thoughtful examination of the patent-in-suit, relevant technology, documentary evidence, and witness testimony presented during the hearings.

The full Commission then granted review of the ID on November 25, 2013, and comprehensive briefing followed.   In another carefully reasoned opinion, the Commission examined the proceedings, including claim construction, factual and expert evidence, and the ALJ's ultimate conclusions.  The Commission affirmed the ALJ's determination, concluding that none of the accused products infringes the '336 Patent.  Commission Op. at 1.  TPL could have appealed to the Federal Circuit, but chose not to do so, thus rendering the ITC judgment final.

### D.      The Magistrate Judge's Report and Recommendation

Barnes & Noble moved for judgment on the pleadings for dismissal of TPL's claim of infringement of the '336 Patent.   In a Report and Recommendation filed on May 31, 2015, Magistrate Judge Grewal recommended denying the motion.  He recognized that the question of "whether the *Kessler* doctrine bars a later district court claim based on an earlier determination by the ITC" is an "issue of first impression."  R&R at 2.  He further recognized that "[i]f rights between litigants are once established by the final judgment of a court of competent jurisdiction those rights must be recognized in every way, and wherever the judgment is entitled to respect, by those who are bound by it."  *Id.* at 7 (quoting *Kessler*, 206 U.S. at 289).  But he concluded that

Barnes & Noble failed to meet this requirement "[i]n light of Congress' explicit findings that ITC determinations are not entitled to respect such that later claims are barred." *Id.* In so concluding, he did not consider the statutory text. Rather, he relied first on Federal Circuit precedent holding that "ITC findings have no preclusive effect on district courts," even though Barnes & Noble "is right that none of these opinions considered *Kessler* specifically" and "[t]hey refer only to claim and issue preclusion." *Id.* at 7-8. Second, relying on Federal Circuit precedent characterizing *Kessler* as filling gaps, he noted that there was no "gap" to fill between issue and claim preclusion because those doctrines are inapplicable to ITC judgments. *Id.* at 8-9. Third, he held that "courts must defer to Congress' express views on the preclusive effect of agency determinations." *Id.* at 9 (citing *B&B Hardware v. Hargis Indus.*, 135 S. Ct. 1293, 1298-99 (2015)).

## ARGUMENT

## I.     LEGAL STANDARD

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." *Lyon v. Chase Bank USA, NA*, 656 F.3d 877, 883 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). A Rule 12(c) motion is "functionally identical" to a Rule 12(b) motion to dismiss. *Id.* (quoting *Dworkin*, 867 F.2d at 1192). Thus, for a Rule 12(c) motion, "[t]he Court inquires whether the complaint at issue contains 'sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face.'" *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This Court reviews the R&R *de novo*. Fed. R. Civ. P. 72(b)(3).

## II.    THE *KESSLER* DOCTRINE BARS TPL FROM RE-LITIGATING WHETHER BARNES & NOBLE'S NOOK PRODUCTS INFRINGE THE '336 PATENT

### A.     The *Kessler* Doctrine Prevents Parties from Relitigating a Finding of Non-Infringement

In *Kessler*, the owner of a patent related to electric lighters (Eldred) filed an infringement suit against a competing seller of lighters (Kessler). 206 U.S. at 287-88. Although Kessler prevailed, Eldred then brought an infringement suit against one of Kessler's customers, who sold the same lighters that were at issue in the first action. *Id.* Kessler intervened and also brought a

separate suit to enjoin Eldred from asserting infringement claims against any of his customers for the use of the same lighter that had already been adjudged to be non-infringing. *Id.* The Supreme Court upheld the injunction, holding that the prior judgment "settled finally and everywhere, and so far as Eldred . . . was concerned, that Kessler had the right to manufacture, use and sell the electric cigar lighter before the court." *Id.* The Court explained that the judgment that Kessler had the right to sell his lighter came with "the corresponding duty of Eldred to recognize and yield to that right everywhere and always." *Id.* If Eldred were able to continue to file suits accusing products previously determined not to infringe, "the result will be practically to destroy Kessler's judgment right." *Id.* at 290. In short, by prevailing in the first suit, Kessler had immunized his lighter from any future infringement suits brought by Eldred.

The Federal Circuit just last year reaffirmed the validity of the *Kessler* doctrine. *See Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045 (Fed. Cir. 2014). In *Brain Life*, the Federal Circuit recognized that "[t]here exists a separate and distinct doctrine, known as the *Kessler* Doctrine, that precludes some claims that are not otherwise barred by claim or issue preclusion." *Id.* at 1055-56. The principle underlying the *Kessler* doctrine is that "when an alleged infringer prevails in demonstrating noninfringement, the specific accused device(s) acquires the 'status' of a noninfringing device vis-à-vis the asserted patent claims" and "when the devices in the first and second suits are essentially the same, the new product(s) also acquires the status of a noninfringing device vis-à-vis the same accusing party or its privies." *Id.* at 1057 (internal quotation marks omitted). The court therefore held that "because Elekta's GammaPlan, GammaKnife, and SurgiPlan are essentially the same accused products" found non-infringing in a prior suit, "Brain Life's claims are barred under the *Kessler* Doctrine." *Id.* at 1058. Shortly after *Brain Life* was decided, this Court recognized that *Brain Life* had "demonstrat[ed] that *Kessler* is still in force, and . . . that it 'precludes some claims that are not otherwise barred by claim or issue preclusion.'" *SpeedTrack, Inc. v. Office Depot, Inc.*, No. C 07-3602 PJH, 2014 WL 1813292, at *9 (N.D. Cal. May 6, 2014) (quoting *Brain Life*, 746 F.3d at 1055-56). And this Court accordingly held an infringement suit barred under *Kessler* where the same plaintiff had previously lost an infringement suit involving the same patent and essentially the same product. *Id.*

**B.**     **The *Kessler* Doctrine Bars TPL's Claims in Light of the ITC's Finding of Non-Infringement**

Here, as in *Kessler*, *Brain Life*, and *SpeedTrack*, there is a prior judgment of non-infringement for the same product and the same patent at issue in the prior litigation.  In particular, the ITC has held that Barnes & Noble's NOOK products do not infringe the '336 Patent.  That judgment is binding under the *Kessler* doctrine.

*First*, the express language of *Kessler* establishes that the doctrine applies here.  In *Kessler*, the Supreme Court held that a prior judgment of non-infringement, "whether it proceeds upon good reasons or upon bad reasons, whether it was right or wrong, settle[s] finally and everywhere" the claim of infringement.  206 U.S. at 288.  And the Court stated exactly which tribunals could create a binding judgment of non-infringement:  "If rights between litigants are once established by the final judgment of a *court of competent jurisdiction* those rights must be recognized in every way, and *wherever the judgment is entitled to respect*, by those who are bound by it."  *Id.* at 289 (emphases added).  It is beyond dispute that the ITC – and the Federal Circuit, if TPL had chosen to appeal – had jurisdiction over the matter at issue here.

The *only* basis the R&R invoked for not applying the plain language of *Kessler* – a basis not raised by TPL – is that the ITC's judgment is not entitled to respect.  In particular, the R&R relied upon "Congress' explicit findings that ITC determinations are not entitled to respect such that later claims are barred."  R&R at 7.  Congress, however, made no such explicit findings.  They simply do not exist.

The statute at issue is 19 U.S.C. § 1337.  It says nothing about the preclusive effect of an ITC decision, and nothing to suggest that such decisions may be treated without respect.  To the contrary, the statute makes clear that ITC decisions must be treated as enforceable judgments with serious consequences.  *Id.* § 1337(b), (c), (h), (i), (k).  The R&R ignored the statute entirely.

Instead, the R&R relied solely on a single Senate Report concerning the statute.  R&R at 4.  To begin with, the Senate Report is not the law and does not represent "Congress' explicit findings."  *Id.* at 7.  Legislative history is used to resolve statutory ambiguities, but here there is no ambiguity to resolve, and "we do not resort to legislative history to cloud a statutory text that is

clear." *Ratzlaf* v. *United States,* 510 U.S. 135, 147-48 (1994); *see also Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011) (similar).  Thus, the R&R erred in treating the Senate Report as sufficient – with no statutory support – to conclude that ITC judgments are not entitled to respect.

In any event, the Senate Report does not support the R&R's conclusion.  The Senate Report by its terms applies only to the specific doctrines of claim and issue preclusion:  "[A]ny disposition of a Commission action by a Federal Court should not have a res judicata or collateral estoppel effect in cases before such courts."  S. Rep. No. 1298, 93d Cong., 2d Sess. 196 (1974). This statement is thus inapplicable to the *Kessler* doctrine.  Also, the Senate Report's basis for this statement was the point that "the Commission is not, of course, empowered under existing law to set aside a patent as being invalid or to render it unenforceable," *id.*, a point that is irrelevant to a finding of non-infringement.  Indeed, other language in the legislative history made clear that "[i]t was the intent of Congress that greater weight and finality be accorded to the Commission's findings as compared with those of a trial court."  *Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1019 (Fed. Cir. 1987) (citing S. Rep. No. 466, 96th Cong., 1st Sess. 26 (1979)).  In short, there is nothing in the statute that permits treating ITC judgments with disrespect, and the Senate Report does not speak to the *Kessler* doctrine or findings of non-infringement.

The R&R erred by conflating two issues:  whether an ITC judgment is entitled to respect and whether it is entitled to issue or claim preclusion.  But *Kessler* does not say anything about "respect such that later claims are barred" by issue or claim preclusion.  R&R at 7.  Rather, it just says that the judgment is binding wherever it is entitled to respect.  And there is nothing at all in the Senate Report to suggest that an ITC judgment is not so entitled.

At most, the Senate Report is ambiguous on the issue of the application of the *Kessler* doctrine to ITC judgments.  That means it would be wrong to rely on it.  *See Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1172 n.10 (9th Cir. 2011) ("[U]se of legislative history is particularly inappropriate in circumstances where, as here, the legislators' published statements do not squarely address the question presented.") (quotation marks omitted); *see also Mohamad v. Palestinian Authority*, 132 S. Ct. 1702, 1709-10 (2012) (disregarding Senate Report that "says nothing about" the specific issue at hand); *Ratzlaf*, 510 U.S. at 147 & n.17 (similar).

*Second*, the principle underlying *Kessler* applies equally to the ITC's decision here as it does to the judgment of any other tribunal.  The rationale of the *Kessler* doctrine is that a patentee should not be able to harass another party by repeatedly filing infringement suits after getting a final judgment of non-infringement.  *See Kessler*, 206 U.S. at 290; *Brain Life*, 746 F.3d at 1055-56.  Yet that is exactly what is happening here.  TPL brought its claim in the ITC, it lost, it chose not to appeal, and it is instead pursuing the exact same claim in this Court.  The wasteful, costly, and harassing effect of this attempt to relitigate the judgment of non-infringement is exactly the same as it would be if the first suit were filed in a different federal court rather than the ITC.  The R&R did not take issue with Barnes & Noble's argument that this suit is nothing more than harassment, but held nonetheless:  "[H]arassment in litigation is—unfortunately—nothing unique to patent cases, and even if this special patent rule itself [*i.e.*, the *Kessler* doctrine] remains binding precedent, there seems little or no reason to expand it.  Special rules for patent cases have not exactly fared well at the Supreme Court in recent years."  *Id.* at 11.  However, this case does not represent an expansion of *Kessler*, but a straight-forward application of it.  The terms of *Kessler* and its rationale apply equally to an ITC matter as they do to a civil case.  As for the R&R's suggestion that special rules for patent cases are suspect, *Kessler* is better understood as an extension, in this context, of the general rules concerning finality of judgments that underlie our legal system and permit litigants to go on with business after litigating – once – to judgment and having the matter "settled finally and everywhere."  206 U.S. at 288.  And to the extent it is a special rule, in fact the Supreme Court has reversed the Federal Circuit not because it applies special rules but because certain of its rulings have conflicted with prior Supreme Court precedent.  *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1927-29 (2015); *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 833, 837-38 (2015); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-93 (2006).  What has "not exactly fared well the Supreme Court in recent years" is actually, as discussed above, relying on ambiguous legislative history while ignoring the text of a statute.  In any event, *Kessler* remains the law unless and until the Supreme Court says otherwise, and this Court should not give it an unduly narrow interpretation.

1    The R&R also erred in suggesting that the policy of *Kessler* is inapplicable because there is

2    no "gap" to fill between issue and claim preclusion in this case.  R&R at 8-9.  To begin with, the

3    idea of gap filling cannot be justified as a limitation on *Kessler* because the *Kessler* opinion makes

4    no mention of "gap filling" at all.  Rather, the Federal Circuit's *Brain Life* opinion supplied this

5    concept.  And *Brain Life* did not purport to make gap filling a requirement for application of

6    *Kessler*; rather, it was simply an explanation of why the *Kessler* doctrine mattered in that case.

7    746 F.3d at 1056 ("[T]raditional notions of claim preclusion do not apply when a patentee accuses

8    new acts of infringement . . . .  The *Kessler* Doctrine fills the gap between these preclusion

9    doctrines, however, allowing an adjudged *non-infringer* to avoid repeated harassment for

10   continuing its business as usual post-final judgment in a patent action where circumstances justify

11   the result.").  Moreover, even if gap filling were relevant, under the Federal Circuit's current

12   interpretation of governing law, a gap exists here every bit as much as it did in *Kessler* and *Brain*

13   *Life* because collateral estoppel is unavailable despite the fact that there is an adverse judgment

14   involving the same claim that the parties already spent considerable resources litigating before a

15   competent tribunal.  Had TPL appealed, stare decisis would have "filled the gap" by closing the

16   loophole TPL seeks to exploit.  *See infra* Part II.C.  Thus, contrary to the R&R's suggestion that

17   there is no "gap" to fill here, there is a gap and TPL caused it.

18   *Third*, the application of *Kessler* here is consistent with Federal Circuit case law.  The

19   R&R noted that the Federal Circuit has not applied claim or issue preclusion to ITC judgments.

20   R&R at 7-8.  However, none of those cases considered the *Kessler* doctrine.  And for good reason:

21   almost all of those cases did not involve a finding of non-infringement.  *See, e.g.*, *Texas*

22   *Instruments v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1562-63 (Fed. Cir. 1996); *Bio-Tech.*

23   *Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1563 (Fed. Cir. 1996).  The R&R notes that one case

24   did involve a finding of non-infringement.  R&R at 8 (citing *Powertech Tech. Inc. v. Tessera, Inc.*,

25   660 F.3d 1301 (Fed. Cir. 2011)).  In that case, though, the Federal Circuit held that the ITC

26   decision, which it had affirmed, was binding as a matter of stare decisis.  *Id.* at 1303-04, 1308.

27   The R&R found it significant that the Federal Circuit invoked stare decisis rather than *Kessler*.  *Id.*

28   at 8.  But especially if *Kessler* is primarily a gap-filler, this should be unremarkable.  The Federal

1    Circuit in *Powertech* had no reason to consider whether the *Kessler* doctrine provided an

2    *additional* basis for holding that the finding of non-infringement was binding.  Thus, there is no

3    Federal Circuit law that even suggests, let alone holds, that an ITC judgment of non-infringement

4    is not binding.  In any event, the Federal Circuit has never considered the *Kessler* doctrine for such

5    ITC judgments because no party has yet raised the issue.

6         To be sure, the Federal Circuit has relied on the Senate Report discussed above in holding

7    that ITC judgments are not entitled to claim or issue preclusion.  Particularly in light of the

8    Supreme Court's recent holding in *B&B Hardware* that "absent a contrary indication, Congress

9    presumptively intends that an agency's determination . . . has preclusive effect," and that there is

10   no such indication where the statute's "text certainly does not forbid issue preclusion" and "[n]or

11   does the Act's structure," the conclusion that those cases reached is now questionable at best.  135

12   S. Ct. at 1305.[2]  Even assuming that those cases remain good law, this Court should not expand

13   their tenuous rationale to cover a separate doctrine that the Senate Report does not even mention.

14        Indeed, as the R&R overlooked, the rationale for applying the *Kessler* doctrine here is

15   considerably stronger than in *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729 (Fed. Cir. 1987),

16   where the Federal Circuit applied the doctrine to a state court judgment.  In *MGA*, the Federal

17   Circuit held that the *Kessler* doctrine applies to state court judgments about the scope of license

18   agreements that effectively resolve infringement questions, even though jurisdiction over

19   infringement is exclusively federal.  The court explained:  "In this case, MGA selected its first

20

---

21        [2]   In its motion for judgment on the pleadings before Magistrate Judge Grewal, Barnes &
22   Noble preserved its argument that the Federal Circuit decisions regarding res judicata and
     collateral estoppel are erroneous, while recognizing that those decisions were binding on this
23   Court.  After briefing was complete, the Supreme Court decided *B&B Hardware*, which now at a
     minimum casts doubt on that Federal Circuit case law.  Because the claim at issue here should be
24   barred based on the *Kessler* doctrine, this Court need not reach the issue or claim preclusion
     issues.  If this Court were to overrule Barnes & Noble's objections, however, Barnes & Noble
25   reserves the right to file a new motion for judgment on the pleadings based on issue and/or claim
     preclusion in light of the *B&B Hardware* decision that was unavailable at the time of the original
26   motion.  To the extent this Court would prefer to decide the issues simultaneously, Barnes &
     Noble asks the Court to permit the parties to file supplemental briefing to address issue and/or
27   claim preclusion now, in conjunction with Barnes & Noble's pending objections.

28

defendant, first forum and first remedy.  MGA had its day in court with a full trial on the merits of its case.  . . .  Nor was MGA left without recourse to seek correction of any perceived errors committed by the state court." *Id.* at 735.  The same (and more) is true of the ITC judgment here: TPL chose to sue Barnes & Noble, chose the ITC forum, and chose not to appeal despite its potential for review of the decision in the Federal Circuit.  But unlike the state court in *MGA*, which has no expertise and generally no jurisdiction over patent claims, the ITC has considerable expertise and undisputed jurisdiction.  Moreover, unlike the state court, an appeal from the ITC goes to the Federal Circuit, the same court that would decide the issue from any federal court. Simply put, there is no logical reason why a state court determination of non-infringement would be binding, but an ITC judgment of non-infringement would not.

### C.   TPL Cannot Evade the Binding Effect of an ITC Finding of Non-Infringement by Choosing Not to Appeal

There is no legal or practical basis to allow a party to evade an ITC judgment of non-infringement by strategically choosing not to appeal, simply to start from scratch in district court. It is well established that an ITC decision *is* binding when the Federal Circuit decides an appeal from that decision.  As the Federal Circuit has explained:

> TI also argues that by our denying preclusive effect to ITC determinations and to our decisions in appeals from ITC decisions, district courts would be free to ignore our decisions.  That is not correct.  District courts are not free to ignore holdings of this court that bear on cases before them.

*Texas Instruments*, 90 F.3d at 1569.  The Federal Circuit has recently reiterated that "[a]lthough the resolution of the ITC action will not have preclusive effect on . . . the district court in this case," the court is "nonetheless bound by stare decisis to abide by any legal precedents established by our court in" its decision affirming the ITC's judgment.  *Powertech*, 660 F.3d at 1308.

TPL attempted to get around this binding effect of stare decisis by choosing not to appeal, but a party cannot evade an ITC ruling in this way.  Courts consistently refuse to give a party the benefit of a tactical decision not to appeal.  For example, the Supreme Court has held that a party that makes "a considered choice not to appeal . . . cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong . . . ." *Ackermann v. United States*, 340 U.S. 193, 198 (1950).  In another case, the Court held that

respondents could not become "windfall beneficiaries of an appellate reversal procured by other independent parties" where the respondents "made a calculated choice to forgo their appeals." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 400-01 (1981). This simply reflects the general principle that a party's failure to appeal a particular determination bars later relitigation of that issue. *See, e.g.*, *Function Media, L.L.C. v. Kappos*, 508 F. App'x 953, 956 (Fed. Cir. 2013) ("Google's failure to appeal the determined validity of those claims removed them from any subsequent actions."). In particular, in the administrative context, the decision not to appeal to an Article III court does not deprive the judgment of binding effect. *See, e.g.*, *McLellan v. Perry*, No. 3:12-CV-00391-MMD, 2014 WL 1309291, at *5 (D. Nev. Mar. 27, 2014) ("McLellan's contention that the unreviewed determination of the Hearing Officer cannot have a preclusive effect is contrary to established law. . . . [T]he claim was litigated at the agency and became final when McLellan chose not to appeal to the state district court."). Here, likewise, TPL's decision to forego an appeal should not allow it to undermine the otherwise binding effect of the ITC's judgment. The Federal Circuit has never suggested otherwise because in all of the cases regarding the binding effect of ITC rulings, there was an appeal from the ITC judgment. *See Powertech*, 660 F.3d at 1307; *Texas Instruments*, 90 F.3d at 1563; *Bio-Tech. Gen. Corp.*, 80 F.3d at 1563.

Furthermore, the reasoning in the *Kessler* line of cases demonstrates that a decision not to appeal is an illegitimate basis to avoid what would be an otherwise binding judgment. For instance, in *Brain Life*, the patentee argued that because he abandoned some of the claims before trial in the first suit, he should be able to relitigate those claims. The court rejected that argument, holding: "Simply, by virtue of gaining a final judgment of noninfringement in the first suit—where all of the claims were or *could have been asserted* against Elekta—the accused devices acquired a status as noninfringing devices, and Brain Life is barred from asserting that they infringe the same patent claims a second time." 746 F.3d at 1058 (emphasis added). This Court similarly recognized that what matters under *Kessler* are the arguments the plaintiff could have pursued, regardless of whether it actually did so. *See SpeedTrack*, 2014 WL 1813292, at *9. Once a product is adjudicated not to infringe a certain patent, that status cannot be undone by arguments about what a plaintiff might have done differently in the first suit. This logic applies

equally to the decision not to appeal – what matters is that if the ITC's judgment was flawed, TPL could have brought all of its arguments to the Federal Circuit. Having elected not to do so, TPL should now be bound by the effect of the ITC judgment.

Despite recognizing that "[i]t is well-established that a party cannot avoid the binding effect of a judgment by choosing not to appeal it," the R&R concluded that this principle was inapplicable because there are "practical reasons why such an appeal would have made little sense in this context." R&R at 10. However, neither Magistrate Judge Grewal nor TPL cited any legal support for the proposition that a party may avoid the binding effect of a judgment by not appealing if it has practical reasons not to appeal. If that were the rule, many litigants would find reasons why an appeal would be impractical. Moreover, the facts belie TPL's assertion – made only in their brief, without any supporting evidence – that the decision not to appeal was a matter of timing instead of a strategic calculation to avoid the consequences of its ITC loss while inflicting maximum financial pain on Barnes & Noble. First, based on average length of a Federal Circuit appeal of 14.4 months,[3] the appeal from the ITC's February 2014 judgment would have been completed in time for TPL to get an injunction before the September 2015 expiration of the patent. Moreover, the average time could almost certainly have been shortened if TPL moved for an expedited appeal or simply filed its brief before the due date. Thus, there was no serious risk that the appeal would have been moot. Second, under TPL's logic, there was barely any point in bringing the ITC action at all, since the ITC decision came only one-and-a-half years before the expiration of the patent. Indeed, even if TPL had prevailed in the ITC, there would have been an appeal from the alleged infringers, and thus there would have been only a short time between the ultimate decision on an injunction and the expiration of the patent. Third, if it actually believed it was right on the merits, TPL had a strong incentive to appeal because (regardless of the *Kessler* issue) the Federal Circuit's decision would have been binding in this case as a matter of stare

---

[3]   *See* United States Court of Appeals for the Federal Circuit, *Median Time to Disposition in Cases Terminated After Hearing or Submission*, available at http://www.cafc.uscourts.gov/images/stories/Statistics/med%20disp%20time%20merits_table.pdf.

decisis.  Thus, as the R&R recognized, *see* R&R at 10, TPL could have gotten the definitive claim construction that instead it seeks to pursue here, which will still end up in the Federal Circuit if any party chooses to appeal.[4]  The only benefit to TPL in creating this circuitous route to the Federal Circuit is to drive up litigation costs.  This is exactly the sort of gamesmanship that courts routinely disallow and this Court should likewise reject.

Finally, *Kessler* was designed as a policy matter to ensure fairness to makers of products adjudged to be non-infringing, and the policies at issue here uniformly support giving binding effect to the ITC judgment.  TPL filed suit in this Court and in the ITC on the same day with the same alleged basis for infringement.  In the ITC proceeding, TPL had every incentive to – and in fact did – make its very best arguments for infringement.  Accordingly, this case is nothing more than a second chance for TPL to pursue claims on which it already failed in another forum and to force Barnes & Noble to defend itself again after being forced to expend substantial sums in defending itself in the ITC – a prime example of harassment.  The proper way for TPL to challenge that decision would have been an appeal to the Federal Circuit, not to attack it indirectly (or otherwise ignore it) in this Court.  Such an indirect challenge is especially inefficient for the parties and the Court given that the ultimate review in this matter would also rest with the Federal Circuit.  And if allowed, it would wrongfully encourage parties not to appeal in the hope of receiving a different opinion from another forum, which they could still appeal if unsuccessful.

## CONCLUSION

For the foregoing reasons, Barnes & Noble, Inc. respectfully requests that the Court reject Magistrate Judge Grewal's Report and Recommendation, grant Barnes & Noble's motion in accordance with Rule 12(c), and enter judgment on the pleadings, dismissing Plaintiffs' third cause of action with prejudice.

---

[4]  TPL also avoided a definitive decision by settling an appeal in *HTC v. TPL*, No. 5:08-cv-00882-PSG (N.D. Cal.).  While Magistrate Judge Grewal notes the district court's decision in the *HTC* case, R&R at 10, neither he nor TPL suggests that the decision should have any effect on this case, and for good reason:  Barnes & Noble was not a party to that case, and there is no stare decisis effect binding Barnes & Noble because the appeal was settled.

DATED:  June 15, 2015                     QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP


                                          By /s/ David Eiseman
                                             David Eiseman
                                             Attorney for Defendant Barnes & Noble, Inc.

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that, on June 15, 2015, I caused the foregoing document to be served on

3   counsel of record via the Court's CM/ECF system.

4

5   Dated:  June 15, 2015

6

7                              By */s/ David Eiseman*
                                    David Eiseman
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28